28 C.C.P.A.(Patents)

## CIBA PHARMACEUTICAL PRODUCTS, Inc. v. ABBOTT LABORATORIES.

## SOCIETY OF CHEMICAL INDUSTRY IN BASLE v. SAME.

Patent Appeals Nos. 4512, 4513.

Court of Customs and Patent Appeals.

July 2, 1941.

E. F. Wenderoth, of Washington, D. C., for appellants.

Cyril A. Soans and Wm. E. Anderson, both of Chicago, Ill., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

These are appeals from decisions of the Commissioner of Patents affirming decisions of the Examiner of Interferences in two trade-mark opposition proceedings, which, because of the fact that the issues in both cases are identical, were consolidated for hearing.

■ The respective decisions of the commissioner, like those of the Examiner of Interferences, are expressed in substantially identical language, and we quote the commissioner's statement of the cases as follows:

"These are appeals from decisions of the examiner of interferences in two opposition proceedings involving the application of Abbott Laboratories for registration of the notation 'Dical-D,' with a disclaimer of the final 'D,' as a trade-mark for 'medicinal wafers containing dicalcium phosphate and viosterol.' This product is recommended for the relief of dietary deficiencies. The mark has been used since December 28, 1937.

"The opposer Society of Chemical Industry in Basle is a Swiss concern, and the opposer Ciba Pharmaceutical Products, Inc., is its exclusive United States agent. Both rely upon the said society's ownership of registrations issued July 7, 1914, and July 22, 1919, respectively, of the trade-marks 'Dial-Ciba' and 'Dial' for 'a pharmaceutical product—viz. C. C.—diallylbarbituric acid —and particularly applicable as a dormitive and a sedative.' "

Both tribunals of the Patent Office took the view that because of the differences in the goods and the differences in the marks there is no reasonable likelihood that confusion would result from the use by Abbott Laboratories of the mark which it seeks to register and, therefore, held that the oppositions should be dismissed. The commissioner said, inter alia:

"Broadly speaking the goods of the parties are doubtless of the same descriptive properties; but they differ widely in many of their essential characteristics, are used for entirely different purposes, and are in no sense competitive. They are both sold in drug stores, but that fact is not of controlling importance. As was observed by the Court of Customs and Patent Appeals in the recent case of Kraft-Phenix Cheese Corporation v. Consolidated Beverages, Ltd., 107 F.2d 1004, 1006, 27 C.C.P.A., Patents, 803, 'It is a matter of common knowledge that such institutions sell an almost unlimited variety of articles in distinct and substantially unrelated lines of trade.'

"If applied to identical merchandise it may be that the two marks 'Dial' and 'Dical-D' are too nearly similar in sound and appearance to be concurrently used without confusion, but that is not the situation here presented."

Both parties took testimony which we have carefully examined in the light of the statements made respectively in the application (both proceedings relate to a single application) of appellee and in the registrations pleaded in the notices of opposition.

The testimony shows that appellee's product—"Medicinal wafers containing dicalcium phosphate and viosterol"—is, as expressed by the Examiner of Interferences, "used to meet Vitamin D, calcium and phospherous deficiencies," and that it may be purchased over the counter by any one without a prescription.

With respect to the product named in the registrations pleaded by opposers, the following testimony was given in the cross-examination of a witness called on behalf of opposers:

"X Q. 9. You stated that this product of your company was a hypnotic and sedative. What do you mean by that? A. A hypnotic is an agent which induces sleep and a sedative is one which has a quieting effect on excited nerves.

"X Q. 10. And if administered in a sufficient dose will induce sleep? That is correct, isn't it? A. Yes.

"X Q. 11. What is a dormitive? A. A dormitive is an agent that induces sleep.

"X Q. 12. In other words, dormitive and hypnotic mean the same thing? A. Yes.

"X Q. 13. Did you ever work for any drug store in New York City? A. Yes.

"X Q. 14. Then you, of course, know that under the laws of New York City you could not sell a hypnotic over the counter without a doctor's prescription? A. Yes.

"X Q. 15. On your direct examination you were asked whether or not you considered dicalcium phosphate and viosterol a pharmaceutical product. Do you know what dicalcium phosphate and viosterol is? A. Yes, I know what it is.

"X Q. 16. What is it? A. Dicalcium phosphate is an inorganic chemical combi-

nation of calcium and phosphate and viosterol and has the physiological and pharmacological action of Vitamin D.

"X Q. 17. Viosterol is, of course, a well known source of Vitamin D. That is true, isn't it? A. Yes.

"X Q. 18. And you, of course, know that viosterol is administered in cases of vitamin D deficiency. A. Yes.

"X Q. 19. And you, of course, also know that viosterol is never administered as a hypnotic? A. Yes.

"X Q. 20. When you say 'yes', you mean it is never administered as a hypnotic? That is true, isn't it? A. That is right.

"X Q. 21. And you, of course, know that dicalcium phosphate in a combination with viosterol is never administered as a hypnotic? * * * A. Yes. I know it is never administered as a hypnotic."

It is clear that there is a per se difference between the goods of the respective parties as to their inherent characteristics and, of course, as to their uses. We regard both as being medicinal in character, but the product of appellants, in its essential substance, differs from the product of appellee in its essential substance, and the difference in use is obvious. The fact that both are medicinal in character and have a therapeutic effect upon users of necessity makes carefulness in selection imperative on the part of prudent purchasers.

Upon the differences in the contesting marks it is unnecessary to comment, because such differences are obvious.

In the course of the trial a witness on behalf of appellants who identified himself as "assistant medical director of Ciba Pharmaceutical Products, Inc.," testified as follows:

"Q. 115. Having testified that you are familiar with some of the Applicant's marks and your own marks, what *in your opinion* would be the effect in the minds of the ordinary purchasers if they saw goods marked Dial, and at the same time, goods marked Dical? * * * A. It might cause confusion.

"Q. 116. On what do you base *this opinion?* A. On the close similarity of the two terms, Dial and Dical, and in conversation or by telephone, one product is liable to be mistaken for the other if not pronounced clearly or written legibly." [Italics ours.]

From the foregoing it is argued that opposers' record "shows that the marks are confusingly similar." Of this contention it is sufficient to say that the testimony amounts to nothing more than the expression of an opinion by the witness, which obviously is not binding upon either the tribunals of the Patent Office or the courts.

The decision of the commissioner in each case is affirmed.

Affirmed.

HATFIELD, Associate Judge, dissents.