34 C.C.P.A. (Patents)

**CHATHAM PHARMACEUTICALS, Inc., v. RESERVE RESEARCH CO.**

Patent Appeal No. 5260.

Court of Customs and Patent Appeals.

Feb. 11, 1947.

Harry B. Rook, of Newark, N. J., and Lee L. Townshend, of Washington, D. C., for appellant.

John F. Robb, of Cleveland, Ohio, and Harry C. Robb, of Washington, D. C. (John W. Robb, of Cleveland, Ohio, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents, 65 U.S.P.Q. 437, affirming the decision of the Examiner of Interferences sustaining appellee's opposition to the registration of appellant's mark under section 5 of the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 85.

Appellant's trade-mark comprises the terms "Aluminoid" and "Colloidal Alumina," the term "Colloidal Alumina" being disclaimed apart from the mark as shown.

There are other features in appellant's mark which need not be described here because the dominant feature of appellant's mark is the term "Aluminoid."

Appellant's mark has been used in interstate commerce since May 14, 1940, on "colloidal aluminum hydroxide in powder form" and is sold in gelatin capsules for the treatment of gastric ulcers and hyperacidity.

Appellee's mark consists of the term "Aloloid" which was registered August 19, 1941, No. 389,778, upon an application filed April 5, 1941.

Appellee's product is a medicinal preparation and comprises an emulsion of aluminum hydroxide with mineral oil and is used for the treatment of gastric hyperacidity and peptic ulcers.

The evidence in the case was stipulated by the parties. It appears therefrom that appellee commenced the use of its trademark on its product on January 2, 1940, and it is conceded by counsel for appellant that appellee was the first to use its mark on its goods.

It appears from the record that the goods of each of the parties is used medicinally for the same purpose and each is composed essentially of aluminum hydroxide. The only difference between the goods of the respective parties is that appellant's is in the form of a powder and is sold in capsules, whereas appellee's goods is an emulsion composed of mineral oil and aluminum hydroxide.

Although it is not stated in the agreed statement of facts that the goods of the parties are sold by drug stores to the purchasing public, it is obvious that they are. That they are competitive products and sold for treatment of the same ailments is not disputed. Although not identical, the goods of the parties are of the same descriptive properties and the sole question in the case is whether the trade-mark of appellant—Aluminoid—is confusingly similar to appellee's trade-mark—Aloloid.

The tribunals of the Patent Office concurred in holding that the marks were confusingly similar and, therefore, appellant was not entitled to the registration of its mark.

It is contended here by counsel for appellant that appellant's trade-mark Aluminoid is "substantially different in sound, appearance and significance" from the trade-mark of appellee and that as the goods are not identical—appellant's being put up in capsules in the form of powder, whereas appellee's is in the form of an emulsion—it is unlikely that the concurrent use by the parties of their trade-marks on their goods would result in confusion in trade.

Several cases are cited by counsel for appellant which, it is alleged, support their theory that there is no likelihood of confusion in the concurrent use of the involved trade-marks. The case most strongly relied upon by counsel for appellant is that of Ciba Pharmaceutical Products, Inc., v. Abbott Laboratories, 121 F.2d 551, 553, 28 C.C.P.A., Patents, 1315, in which it was held that the trade-marks "Dical-D," the final letter "D" being disclaimed apart from the mark as shown, used on "medicinal wafers containing dicalcium phosphate and viosterol," recommended and used for dietary deficiencies, was not confusingly similar with the trade-marks "Dial-Ciba" and "Dial" used on a pharmaceutical product—a dormitive and a sedative. Counsel for appellant particularly emphasizes a statement in that decision where it was said:

"It is clear that there is a per se difference between the goods of the respective parties as to their inherent characteristics and, of course, as to their uses. We regard both as being medicinal in character, but the product of appellants, in its essential substance, differs from the product of appellee in its essential substance, and the difference in use is obvious. The fact that both are medicinal in character and have a therapeutic effect upon users of necessity makes carefulness in selection imperative on the part of prudent purchasers."

The court in that case also observed that there was considerable difference in the marks of the parties. For the reasons stated, the court was of opinion that the marks there involved were not confusingly similar and affirmed the decision of the Commissioner of Patents.

The difference between that case and the instant case is so obvious as to require little comment. In the Ciba Pharmaceutical Products, Inc., case, supra, the Abbott Laboratories' mark "Dical-D" was used on a vitamin D product which could be purchased in any drug store without a physician's prescription, whereas the Ciba Pharmaceutical Products, Inc., trademarks—"Dial-Ciba" and "Dial"—were used on a dormitive and a sedative which produced sleep and which could be purchased only upon the prescription of a physician.

In the instant case, the product of each of the parties is used for exactly the same purpose and can be purchased without a doctor's prescription. Moreover, the involved goods are competitive, whereas in the case cited, the products were not competitive.

Other cases are relied upon by counsel for appellant, which we need not here discuss, as we have frequently held that the citation of authorities, except upon questions of law, is not helpful in the decision of cases of this character.

It is true, as argued by counsel for appellant, that there is some difference in the marks of the parties and that although the goods are used for precisely the same purpose, they are not identical. We are of opinion, however, as were the tribunals of the Patent Office, that the marks are confusingly similar and that appellant is not entitled to the registration of its mark. In so holding, we have considered, as we should, the marks as a whole, although we have analyzed for the purpose of this decision, the differences in the respective marks.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.